Good morning. I wish to reserve time for rebuttal. First, I want to address the supplemental brief that the defendants filed this week as a Rule 28J authorities update. There's nothing new in there. It is not a surprising document. It exemplifies the issues that have been in this case from the start. The opening paragraph of that attachment states that they have authority to revoke this visa under Section 205 of the Immigration and Nationality Act, which provides that visas issued under Section 204 can be revoked at any time. Counsel, why doesn't that moot this case? Or should we stay this case pending your – are you going to appeal that? Do you have a right of appeal of that decision? Well, yes. In fact, I'll address the – first of all, the 204 is only for family-based petitions. So 205 has absolutely nothing to do about this case. The visa here was issued under Section 203 of the Immigration and Nationality Act. That is where all of the employment-based visas are at. Specifically, Section 203b-5, which is the investor visas. There are very limited circumstances under which those can be revoked. But one of the things I do ask for from this Court today is that because of the nature of the investor visa, and the discretion of the Attorney General certainly can't conflict with that – with the mandate of Congress, is that you start making this investment, and then you come back two years later, you get conditional permanent residence, then you come back two years later, and then all these issues can be raised. There's absolutely nothing in that document which should have been raised at this point. That is all material for some point in the future. Because you don't have an appeal today of that – of that document, of the AAU decision that was filed in the 28J letter. No. My question is, should – should we – should we hold this decision pending your – whatever appeal you intend to take of that decision? Why should this – why is this decision free to go ahead? Why is this case free to go ahead in light of that? Well, there's two things going on here. One is the adjustment of status. I want to make clear that what I'm doing today has really very little to do with that underlying petition. Okay? At the time adjustment of status was filed, that was – you know, that was a valid petition. Now, can – they can't go back and retroactively revoke that. The – they have no authority. They've never provided any authority for revocation of that. Furthermore, even if they had the authority under Congress's structure of the investor visas, they have to wait until two years before they can come back and examine the investment to see if it was done according to the law. What this is really about today is the adjustment of status. The adjustment of status, again, at the time it was filed, it was – it was proper. The visas were properly in place. And the question for this Court is, when does adjustment of status – the status of being an adjustment end? And I submit it's not over until it's all over. Until the administrative appeal was complete, they could not go back and dismiss that adjustment of status because nothing else makes sense. They were retroactively – they were retroactively dismissed going back two years, which immediately makes them ineligible for adjustment of status or to enter the United States again for another ten years. There's all these penalties came into play at the time of that dismissal of the adjustment of status. Counsel, isn't your petition for adjustment of status dependent upon the fact that they are – that they were seeking investor visas? The investment That they had made investments in the United States. Those two things are really not independent. I understand you're – you have two sort of parallel proceedings, but the fact of the matter is that their application for adjustment of status was in some way dependent upon their status as investors in the United States, wasn't it? Correct. The – at the time – the wording at the time that the adjustment of application is filed, Section 245 of the Immigration and Nationality Act, at the time it is filed is when that has to be a valid visa. Now, what happens later on if something happens to that? For example, it's always been – well, before the Child Status Protection Act, it has always been the procedure that if a child aged out, for example, while the adjustment application was pending, in other words, they no longer had a valid underlying application, they keep it in abeyance for five, ten, fifteen years until it became valid again. And I'm saying the way investor visas are set up and the way you apply for adjustment of status under the investor visas, the way it's set up is until that administrative appeal is complete, they cannot deny. They cannot go back and say, we're denying it. I think they realize that. I think that's why they made it a retroactive. If that – if you're correct then, counsel, then this appeal is moot and we ought to hold this decision until you've exhausted all of your remedies on the – on the – on your petition for investor status. If that's denied, then I – then you don't have a pending adjustment of status here. If it's granted, then you do. But it still becomes a point as to when the adjustment died, because when that died, they're out of status, which means they can't reapply. In other words, they could reapply tomorrow for another visa and fix their status if, as of the date of that document, the supplemental brief, that's the date that everything died. If that's the date their adjustment died and I haven't received a letter this week saying, based upon this, we're again deciding that your adjustment is dead, but until that – I'm sorry, you say you did receive a letter this week? I did not receive a letter, yeah. You did not receive a letter. Yeah, that is what I should get now, but I'm not really expecting it. But you see, they're out of status and they have to be in status to immigrate under employment-based visas. It's not like the family-based visas where you can be out of status for many, many years and apply and adjust status. Is she in or outside the country right now? They're in the country. They're in the country. They're here. So the – without the adjustment of status – in other words, let's suppose we follow the route Judge Bivey's suggesting, what happens to her while – or the family while this appeal from the Administrative Appeals Unit is resolved? The question is, I mean, assuming that there's been a – once the adjustment is denied and is dead, then they're out of status at that point. And then what happens? Well, then things kick in like 212.89 where they have unlawful presence in the United States. Okay, so then removal proceedings, generally speaking, could be instituted. They could be, as a minimum, and I put that in my reply brief, that they're sweating now, they could kick in the door any day and take them away to detention. Well, are they out of status right now, at this moment? It's not clear. Does this appeal sort of preserve their status? I don't know that this appeal preserves their status. I know they have another lawyer working on some kind of status for them. I don't really – I'm not familiar with that. I don't really know what that happens to be, okay? But as it stands now, they've been technically out of status since the adjustment has been And I've listed some of those penalties, but the biggest one is that when you're out of status for over a year, then you can't enter the United States for 10 years. And under 245C, you can't adjust status if you've been out of status and it's an employment-based visa and you've been employed. Well, they're still working at their restaurant that they've pumped millions of dollars into. This is just not – this – the statutory scheme, this is not what Congress had in mind when they put this – these visas together. You wanted to save some time. Why don't you do that? We'll hear from the government and then you can respond to that. Thank you. Good morning, Your Honors. I'm Dorothy Scout and this is the United States Attorney and I represent the Department of Homeland Security. I would have to concede that I have found this case to be a little bit confusing for the very reason that Judge Bybee raised, which is – That makes us feel better. Because I certainly found it confusing. Which is, how can you be fighting about the I-485 adjustment of status when it's wholly dependent on the business visa? So what – in the government's view, what would the government like us to do? Why isn't this appeal – why shouldn't we hold this appeal pending the resolution of the – of any appeal from the AAU decision? There really is no reason. And I would have said that with or without the AAU decision. The reason is, if we take the plaintiff appellants at their word, this is only about an I-485 adjustment of status. The district court dismissed that issue on the basis that it didn't have jurisdiction. But I think that at this point, in this circuit, after Hernandez-Spencer and the ANA International, we really can't have that argument. I think the district court was incorrect about that. But there's no different result. And that's why the dismissal should be affirmed. Because the result is based – had the court looked at the issue, and the issue is – the court would have looked at the non-discretionary factors and criteria involved in the visa – I'm sorry, in the I-485. One of the criteria is that there has to be a valid underlying visa. As of the date that the adjustment of status was denied, there was no underlying visa. The visa had been revoked. When it's revoked under Section 1155, it's revoked as of the date of approval. That's the way the statute reads. There's been no contrary interpretation of that. So what would the government like us to do in this case? We should dismiss this appeal? We should deny the petition? Or we should hold this pending resolution of all and any appeals in the AAU? I believe that the correct answer is that the court should affirm the dismissal of the district court on alternative grounds. Because to the extent that the DNEDA and dependent applicants have any remedy at all, what they probably need to do – and I don't pretend to be an expert practitioner and I don't know everything that's possible – but what they do next on the visa revocation really is to go into district court and have them look at whether – But what happens to them in the meanwhile? Are they going to be thrown out of the country while – Well, Your Honor, that's a very dramatic statement. Well, I understand it's dramatic, but we get a lot of cases where people with very dramatic situations are being thrown out of the country. Right, but – It would be helpful to know what would happen. You say you're not an expert in the area, but you're asking us to affirm the dismissal on the theory that they can pursue – they should be pursuing their remedy, in effect, through the appeal to the district court from the adverse AAU decision. But there's a question – It's very different than that. I would say that the court should affirm the dismissal because, in fact, there could be no other decision. There had to be a dismissal because according to the plaintiff appellants, they weren't challenging the visa and, indeed, they couldn't have challenged the visa because it wasn't final. Now that the visa revocation is final under Ninth Circuit law, they're certainly permitted to take it to the district court and have the district court look at the record that was presented to the agency and determine whether or not the agency abused its discretion, whether it was arbitrary and capricious in determining that they had not met the criteria for a business visa. And so – but in the meanwhile, which is part of their concern and understandably, is there any remedy for an immigrant in that circumstance, in this case an investor, for them to preserve their status in the United States, to preserve their stake in this restaurant so that they can, while they're pursuing, sort of maintaining the status quo until they've exhausted – I understand you don't want to do it as an exhaustion decision, but that's part of the problem here. At least I'm trying to get my arms around. And so what do you think will happen? Let me just say as a preliminary matter, in this case, counsel has represented that they have temporary legal residence. They don't. They never did. They never had resident status. Just because you have filed an application for adjustment status doesn't give you any status at all. There is no status until it is granted. The status they had, if any, had nothing to do with legal residence. They came in on visitor visa, on a conditional parole. Their option then, frankly, was to get extensions of those permissions to be in the country. And I say permissions because it really isn't a legal status. So it's not like they're losing something that they had. They didn't have it. They had an application pending, but they don't have status until it happens, until it is granted, which is why the agency carefully looks at the underlying visa when it's looking at the application for adjustment of status. What happens next, I think, is the question you're asking. How do they save themselves now? Well, part of the problem is they find themselves in this difficult situation because they didn't preserve their visitor or business visa status and the other things that were available to them then. However, at this point, they will not be dragged out of their beds. That's interesting, but not how it happens. If the agency determines to do that... Actually, I have personal knowledge of a situation where the INS actually did bang down the door and drag somebody out of his bed in front of his family. I'm aware of that, but I would guess that it wasn't a business visa. Probably not. That doesn't give me a lot of comfort either. Okay. What happens next is they would, if the agency decided to do it, if, and that's a big if, the agency could issue a notice to appear and begin the removal proceedings. In the removal proceedings, they would re-raise the issue of an application for adjustment of status. In the context of that, in order to have a foundation, because of course they still can't get it if they don't have the visa, the visa has to be looked at again. That's sort of a tricky issue as to whether the IJ looks at it or whoever it is actually looks at it. Typically, if, and I don't make a representation on behalf of the agency here, but my experience with it is that if they went, if the agency went to the trouble of starting removal proceedings and since they haven't done it for this long and I have no representation from them that they're interested in doing so, then typically what would happen is they would file something before the immigration judge saying we want to stay this proceeding until we get an answer from the district court. Is there any possibility, you don't have to bind anything, but is this the kind of thing where the department and the petitioner can sit down and work this out along the lines you've talked about? Let me tell you what the problem with that is and typically, you know, when I can get rid of these kinds of things I do because there's nothing to be gained if there's just been an agency mistake. The problem with this is that there's a lot of things in that application or the petition for the visa that just don't ring true. Well, I'm not trying to get you to commit. We have a mediation service here at the court if things can be worked out to resolve things and we're happy to provide that facility. It's purely voluntary and I understand the government has institutional interests but I know that the government also, at least when I was working for it, has a policy of engaging in mediation in some instances. Just a thought. We do and I agree with you but at this point in this exact situation where we're at now there isn't something that we can do. Frankly, I'm happy to go back and ask the agency is there some way of resurrecting the old visitor status maybe or some other piece that they dropped along the way because I have no interest in any particular person leaving the country while they're battling this. In addition, Mr. Blake said something about they're in the country and they couldn't travel. I think he said that in their papers. It's not part of the record but it would show that Mrs. Donato has been in and out of the country since all of this has happened and she's been able to get in and out on a conditional parole issue. I appreciate your candor and your responses and I think we have your position. Thank you. I want to make completely clear that Section 1155 does not apply to employment-based visas. It is exclusively family-based. It goes to Section 205 Immigration Nationality Act to 204. So we still have no authority for revoking visas. I think the point missed is that the reinstatement of the investor visa itself the petition itself does not reinstate the adjustment of status. They have to reapply but they cannot reapply because they've been out of status now. Have you sat down and tried to work this out or has this been all through the traditional adversarial process? I have not sat down with the U.S. Attorney's Office to try to resolve this but I don't think it can be resolved unless they're put back into adjustment status and I don't think they're going to give that to us. I don't think it's legally possible to do that without them being in adjustment status. I have no knowledge of these other facts that you brought up. The matter of being able to pursue this in front of the immigration court I don't think is true. I see many issues in the law and it's certainly not consistent with my 20 plus years in front of the immigration court that this type of thing could be pursued there. So this is pretty much the end of the line for my clients. Okay. All right. Thank you. Thank you both counsel The case argued and submitted. Okay the next case excuse me the next case on calendar is Hernandez.
judges: Browning, Fisher, Bybee